```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

**CLEVELAND CLINIC FOUNDATION,**

    Plaintiff

v.                                                                                    CIVIL ACTION NO. 2:05-0134

**WELDING INC. EMPLOYEE BENEFIT PLAN,**

    Defendant

## MEMORANDUM ORDER

This matter is before the court on defendant's renewed motion to dismiss, filed March 17, 2005[1], and subsequently converted to a motion for summary judgment by agreement of the parties. (<u>See</u> court's order dated April 20, 2005.)

I.

Glenn Rehe, a former employee of Welding, Inc. and a beneficiary of the defendant Welding, Inc. Employee Health Plan

---

[1] The initial motion to dismiss was filed October 29, 2004, with the United States District Court for the Northern District of Ohio. It was styled, "Defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue to the United States District Court for the Southern District of West Virginia."

("the Plan"), received medical care from plaintiff Cleveland Clinic Foundation ("Cleveland Clinic"), a hospital, from December 22, 2000, through January 15, 2001.  (Compl. ¶¶ 2, 5.)  Sometime thereafter, a bill for Mr. Rehe's care in the amount of $160,488.75 was submitted to defendant plan, and the Plan paid a portion of that sum.[2]  (Compl. ¶¶ 7-8.)  The balance has never been paid.  (Compl. ¶ 8.)  Cleveland Clinic seeks $64,759.88 plus interest for the outstanding medical bills.  (Compl. ¶ 10.)  Mr. Rehe is deceased (Def. Reply Mem. at 2), and Cleveland Clinic says that his widow has executed an Assignment of Benefits (Compl. ¶ 6).

The Plan was or is self-funded from employer-employee contributions.  (AR at 8.)  Its claims were administered by Consolidated Benefits, Inc., which informed the Plan on November 13, 2000, that the plan terms would not be renewed because the total of participants had fallen below the requisite number of

---

[2] Cleveland Clinic attached to its complaint what it purports to be a medical bill showing the unpaid balance. (Compl. Exh. B.)  The document, dated January 29, 2004, shows prior payments totalling $95,728.87, but it does not show what portion of that amount was paid by the Plan or its claims administrator, Consolidated Benefits, Inc., and what portion was paid by Carelink, which subsequently assumed responsibility for Welding, Inc. Employee Benefit Plan claims.  (Exh. B at 2.)  It appears that Carelink may have paid a total of $51,207.28.  (AR at 184.)  The bill submitted by plaintiff shows a total of $64,759.88 "due from patient."  (Exh. B at 2.)

twenty-five. (Def. Reply Mem. at 2; AR at 177.) The Plan says that it in turn notified employees of Welding, Inc. that all medical bills were to be submitted for payment by December 31, 2000, on which date the plan terminated at midnight.[3] (Def. Reply Mem. at 2; AR at 84; see also Declaration of Bruce Caswell, attached as Exh. A to Def. Mem.) Indeed, it appears that Bruce Caswell of Welding, Inc. also sent, on December 28, 2000, a letter informing the Cleveland Clinic billing department that "[t]he policy which covered Mr. Rehe was cancelled and only bills . . . processed by noon 12/29/00 will be paid." (AR at 89.) Caswell further asked that Cleveland Clinic "[p]lease provide current charges as well as proposed charges through 12/31/00." (AR at 89.)

According to an affidavit completed by Raymond Grier, Cleveland Clinic's supervisor of insurance collections, a bill for Mr. Rehe's claim was first submitted to Consolidated Benefits on January 12, 2001. (Affidavit, appended to Pl. Nov. 30, 2004, Resp., ¶ 7.) He goes on to say that "on 11/9/01 hospital personnel were advised that the claim was denied on 10/1/01 for

---

[3] By letter dated December 26, 2000, and addressed to Bruce Caswell of Welding, Inc., Consolidated Benefits offered to handle the "run-out" claims, being those claims that were incurred prior to January 1, 2001, but not received or paid, for a fee of $550. (AR at 94.)

receipt (sic, lack of receipt?) of an itemized statement," and that a hospital representative contacted Mr. Caswell on November 9, 2001, at which time Mr. Caswell informed the representative that Cleveland Clinic would "lose out on the money owed." (Affidavit, appended to Pl. Nov. 30, 2004, Resp., ¶¶ 9-10.)  Mr. Grier states that the denial decision was appealed "numerous times."  (Affidavit, appended to Pl. Nov. 30, 2004, Resp., ¶ 11.) There does not appear in the record of this case, however, a written denial with regard to the unpaid funds, and there likewise appears no written appeal to the Plan.

      The Welding, Inc. eligible employees and beneficiaries were offered benefits through Carelink beginning January 1, 2001. (Def. Reply Mem. at 2.)  As earlier noted, it appears that Carelink paid Cleveland Clinic a total of $51,207.28 for Mr. Rehe's care.  (See supra, fn. 2.)

      Cleveland Clinic filed the complaint initiating this action on September 14, 2004, in the Court of Common Pleas in Cuyahoga County, Ohio, and the defendant Plan subsequently removed the case to the United States District Court for the Northern District of Ohio.  The matter was transferred to this court on February 16, 2005, upon the Ohio district court's finding improper venue.

4

The Plan argues that Cleveland Clinic's claim, having been brought more than three years after the deadline for submission of medical bills, is time-barred based on a provision set forth in the plan; that Cleveland Clinic failed to exhaust administrative remedies; and that the assignment by Mr. Rehe's widow to Cleveland Clinic is invalid.  (Def. Reply Mem. at 2-3, 13, 15.)  Cleveland Clinic disputes that the Plan was properly terminated and says that it, in fact, still exists.  (Pl. Surr. at 2.)  It further contends that the Plan did not comply with ERISA regulations in denying its claim for payment, and it thus was denied any opportunity to exhaust administrative remedies.  (Pl. Surr. at 5.)  There is no dispute that the Welding, Inc. Employee Health Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and that it is an employee benefit welfare plan, as defined by 29 U.S.C. § 1002(1).

## II.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

III.

According to Cleveland Clinic, Mrs. Rehe assigned to it her rights to benefits under the Plan. (Compl. ¶ 6.) The document, attached as Exhibit A to Cleveland Clinic's complaint, purports to have been signed by Mrs. Rehe, as the "widow" of "Glen W. Rehe (deceased)," on June 5, 2003. The Plan argues first that Cleveland Clinic is a third party with no standing to bring an action under the provisions of ERISA. (Def. Reply at 15.) It further states that the assignment is not valid because it was not provided according to plan requirements. The plan provides that:

> [a] covered person may assign benefits to a
> physician, hospital, or other provider of
> service under this Plan.  The assignment must
> be received by the Claims Administrator with
> the written proof of claim or such assignment
> will not be binding upon the Plan.  In the
> absence of a written assignment, the Plan can
> pay any benefits, for any service provided to
> a deceased covered person, to any person
> appearing to the Plan Administrator to be
> entitled to payment.

(AR at 65, "Assignments.")

6

Certainly, the plan contemplates assignments, and ERISA contains no anti-alienation provision to prevent assignments of enforcement of rights by participants or beneficiaries under employee welfare plans, whereas it prohibits such in the context of pension benefits.  (See 29 U.S.C. § 1056(d).)  The cases cited by the Plan with respect to standing provide no reason for the court to assume that a third party provider cannot seek to enforce the rights legitimately transferred to it by a plan participant or beneficiary.  Indeed, the United States Court of Appeals for the Fifth Circuit has noted the willingness of several circuit courts, including our own, to "recognize[] derivative standing which permits suits in the context of ERISA-governed employee welfare benefit plans, to be brought by certain non-enumerated parties."  Tango Transport v. Healthcare Financial Services LLC, 322 F.3d 888, 891 (5th Cir. 2003)(citing, inter alia, unpublished opinion from the United States Court of Appeals for the Fourth Circuit).  Appellate courts have permitted health care providers to prosecute actions under ERISA based on derivative standing where they are seeking benefits on behalf of their patients, but only after "the healthcare provider had obtained a written assignment of claims from a patient who had standing to sue . . ."  Hobbs v. Blue Cross Blue Shield of

7

Alabama, 276 F.3d 1236, 1241 (11th Cir. 2001); see also Simon v. General Electric Company, 263 F.3d 176, 178 (2nd Cir. 2001)("This circuit joined the Fifth, Sixth, Seventh, and Ninth circuits in carving out a narrow exception to the ERISA standing requirements.  This narrow exception grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care.")

It seems likely, and defendant has not disputed, that Mrs. Rehe would be a beneficiary of the Plan with the ability to execute an assignment of her rights.  The court turns, then, to the question of whether the executed assignment is sufficient to allow Cleveland Clinic to go forward with its claim.  Because this is an ERISA claim, and because the Plan has granted its administrator discretion in interpreting plan provisions, the "validity of the assignment" necessarily "depends on construction of the plan at issue." LeTourneau Lifelike Orthotics & Prosthetics, Inc. V. Wal-Mart Stores, Inc., 298 F.3d 348, 352 (5th Cir. 2002).  Cleveland Clinic's argument with regard to this matter is sparse.  It states only that, "Defendant has admitted that it paid funds to [p]laintiff directly on multiple occasions.  Furthermore, [p]laintiff does not deny that these funds were received and applied to the account.  Defendant would not have

paid [p]laintiff directly if it did not consider the benefits assigned." (Pl. Surr. at 4.)

Cleveland Clinic urges the court to apply a de novo review because "the record is so incomplete as to render the administrative record meaningless." (Pl. Surr. at 8.) The Plan concedes that the record is fractional. (Def. Reply at 5.) The plan unquestionably grants the administrator discretion, however, and the court is limited to reviewing for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).[4] If the missing documents are problematic, it seems that the court is bound to remand the matter to the administrator so that the administrative record can be properly compiled and a decision could be made thereon. Here, however, there is no dispute that no assignment was completed until approximately two and a half years after Mr. Rehe received treatment, and no documentation has been presented that would validate the assignment according to

---

[4] The standard for review of a decision made by trustees of an ERISA benefit plan generally is de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Richards v. UMWA Health & Retirement Fund, 895 F.2d 133, 135 (4th Cir. 1989); de Nobel v. Vitro Corp. 885 F.2d 1180, 1186 (4th Cir. 1989). Where the plan gives the trustees discretion to determine benefit eligibility or to construe plan terms, however, the standard of review is whether the trustees abused their discretion. Firestone, 489 U.S. at 111; Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997).

the terms of the Plan.  Indeed, Cleveland Clinic has not suggested that any such documentation exists.

But the requirements imposed by the Plan call upon a covered person or assignee to take overt action with respect to assigned rights.  That is, the individual must provide the assignment to the claims administrator "with the written proof of the claim or such assignment will not be binding upon the [p]lan."  (AR at 65, "Assignments.")  While the Plan has the discretion to compensate anyone "appearing to the Plan Administrator to be entitled to payment," it is not mandated to do so.  (Ar at 65, "Assignments.")

The court notes that one appellate court has found that a plan is estopped from relying on an anti-assignment provision after failing to assert the clause in more than three years of dealing with a beneficiary's assignee.  <u>Hermann Hospital v. MEBA Medical and Benefits Plan</u>, 959 F.2d 569, 574 (5th Cir. 1992). While it appears that the Plan herein did not question the asserted assignment by Mrs. Rehe until after the institution of this lawsuit, it had no apparent reason to do so.  Mrs. Rehe executed the assignment document on June 5, 2003, but nearly all dealings between the Plan and the hospital appear to have occurred prior to that date.  Cleveland Clinic provides a number

of letters written by its counsel and directed to various potentially interested parties. Only two of those letters – one dated September 23, 2003, and addressed to the attention of Caswell in his position with defendant plan, and another dated October 22, 2003, and addressed to the attention of Caswell in his position with Welding, Inc. – are dated subsequent to the date of the assignment. Neither references the document executed by Mrs. Rehe. The October 22nd letter states that a lawsuit will be filed.

Cleveland Clinic has offered no evidence, nor has it even asserted, that the assignment was provided to the Plan or claims administrator at any time, or that any other assignment was previously effected. Moreover, the assignment by Mrs. Rehe was not executed until June 5, 2003, nearly two and a half years after Mr. Rehe received medical care from plaintiff and the Plan was terminated. Inasmuch as the Plan required that written proof of the claim be submitted within ninety days of the service date[5] (AR at 60), it is not possible that notice of the assignment was provided "<u>with</u> the written proof of claim" (AR at 65, emphasis supplied) as the Plan requires. The terms of the Plan clearly

---

[5] However, upon notice of termination of the plan, claims are to be submitted prior to termination. (AR at 60.)

11

state that unless this condition is met, the assignment is not binding.  Consequently, it appears that the disputed assignment is not valid and plaintiff lacks standing to prosecute this suit.

## IV.

For the reasons stated herein, it is ORDERED that defendant's motion for summary judgment be, and it hereby is, granted.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: August 18, 2006

_____
John T. Copenhaver, Jr.
United States District Judge